UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.  14 CR 155 - 4 |
| v. ) | |
| ) | Hon. Amy J. St. Eve |
| KELSEY JONES ) | |
| ) | |

# MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendant Kelsey Jones has moved to suppress certain physical evidence. For the reasons stated below, the Court denies his motion.

## BACKGROUND

On July 22, 2014, Defendant was indicted in a Superseding Indictment along with co-defendants Toby Jones, Wesley Fields, and Parashun Roscoe[1]. On March 31, 2015, a grand jury returned a fourteen count Second Superseding Indictment (the "Indictment") against Defendant Kelsey Jones and co-defendant Toby Jones. The Indictment charges Defendant Kelsey Jones in five of the fourteen counts. Specifically, Count One charges Defendant Kelsey Jones with conspiring with Toby Jones and others to intentionally possess with the intent to distribute and to distribute a controlled substance, in violation of 21 U.S.C. § 846. Count Seven charges Defendant with knowingly and intentionally distributing cocaine base, in violation of 21 U.S.C. § 841(a)(1). Count Ten charges Defendant Kelsey Jones with conspiring with Toby Jones (i) to kill and attempt to kill a person, and (ii) to knowingly engage in conduct and thereby cause bodily injury to another person, with the intent to retaliate against any person for providing

---

[1] Co-defendant Parashun Roscoe pled guilty on April 17, 2015 (R. 103) and co-defendant Wesley Fields pled guilty on April 12, 2015. (R. 108.)

information to a law enforcement officer regarding the commission and possible commission of a federal offense, in violation of 18 U.S.C. § 1513(f). Count Thirteen charges Defendant with attempting to kill another person with intent to retaliate against a person for providing a law enforcement officer with information related to the commission and possible commission of a federal offense, in violation of 18 U.S.C. § 1513(a)(1)(B). Finally, Count Fourteen charges Defendant with using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). The Indictment also contains a forfeiture allegation.

On April 5, 2014, agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") and officers from the Oak Park Police Department went to Defendant's third-floor apartment located at 653 North Austin Avenue, Chicago, Illinois, for the purpose of executing a warrant for Defendant's arrest. Defendant resided at the apartment with his brother, co-defendant Toby Jones. During the search of Defendant's apartment, law enforcement seized various items, including sweatshirts which appeared consistent with the description of the sweatshirt worn by the individual who had shot an ATF Confidential Informant and his brother on April 2, 2014.

Defendant has moved to suppress the items seized from his apartment on the grounds that the law enforcement agents did not have a warrant or consent to search the apartment. On July 1, 2015, Defendant submitted an affidavit in support of his motion to suppress the physical evidence seized from his apartment. (R. 145-1.) Defendant's affidavit attested to the factual content of his motion and raised a disputed factual issue. Accordingly, the Court held a hearing on August 7, 2015. During the course of the suppression hearing, the government called the following witnesses: Oak Park Police Department Detective James Sperandio, ATF Special Agent Jeffrey Sisto, and ATF Special Agent Christopher Labno. In addition to cross examining the government's witnesses, Defendant Kelsey Jones testified. During the hearing, the Court

carefully evaluated the demeanor and credibility of each witness who testified at the hearing, including body language, tone of voice, facial expressions, mannerisms, and other indicative factors. In addition, the Court admitted the following exhibits: the Oak Park Police Department Consent to Search Form, dated April 5, 2014 (Gov. Ex. 1) and the ATF Consent to Search Form, dated April 5, 2014. (Gov. Ex. 2.) The Court summarizes below the testimony of the witnesses regarding contested factual issues and makes the appropriate credibility determinations.

## ANALYSIS

Defendant Jones moves to suppress the evidence recovered during the search of his apartment on the grounds that he did not consent to the search. Defendant does not contest the legality of the law enforcement officers' entry into his apartment on April 5, 2014. He also does not argue that his consent was involuntary[2]. Instead, Defendant contends that law enforcement carried out the search and seizure in violation of his rights under the Fourth and Fourteenth Amendments of the Constitution because he never consented to the search of his apartment in the first place. Defendant asserts that he both refused to sign a written consent form and did not orally consent to the search of his apartment, thus the agents' search violated his Constitutional rights.

The issue of consent here comes down to credibility. For the reasons explained below, the Court credits the testimony of the law enforcement officers over the testimony of Defendant, and finds that Defendant orally consented to the search of his apartment.

---

[2] Voluntary consent is a question of fact based on the totality of the circumstances. *United States v. Figueroa–Espana,* 511 F.3d 696, 704 (7th Cir. 2007). In making this determination, courts look to the following factors: (1) the defendant's age, intelligence, and education; (2) whether the defendant was advised of his constitutional rights; (3) how long the defendant was detained prior to giving consent; (4) whether the consent was immediate, or was prompted by repeated requests by authorities; (5) whether any physical coercion was used; and (6) whether the defendant was in police custody when he gave his consent. *United States v. Beltran*, 752 F.3d 671, 679 (7th Cir. 2014); *see also United States v. Risner,* 593 F.3d 692, 694 (7th Cir. 2010).

**I.     Legal Standard**

"The Fourth Amendment protects citizens against unreasonable searches and seizures." *United States v. Richards,* 719 F.3d 746, 754 (7th Cir. 2013). "The jurisprudence of the Supreme Court makes clear that the primary bulwark against such conduct is the procurement of a warrant from a neutral and detached magistrate." *United States v. Whitaker,* 546 F.3d 902, 906 (7th Cir. 2008) (citing *Groh v. Ramirez,* 540 U.S. 551, 575, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)). Law enforcement officers generally may not enter into a private home or search it without a warrant–in fact, unjustified entry into the home "is the 'chief evil' against which the Fourth Amendment is directed." *United States v. Sabo,* 724 F.3d 891, 893 (7th Cir. 2013). A well-established exception to the warrant requirement exists, however, where the resident of the home consents to the government's entry and search. *Id. See also United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009). The government has to prove by a preponderance of the evidence that the search falls within this exception. *See United States v. Beltran*, 752 F.3d 671, 679 (7th Cir. 2014). *See also United States v. Zahursky,* 580 F.3d 515, 521 (7th Cir. 2009); *United States v. Basinski,* 226 F.3d 829, 833 (7th Cir. 2000).

In addition, a defendant can orally consent to the search of his residence even if he refused to sign a written consent form for the search. *See United States v. Lloyd*, 151 F.3d 1034 (7th Cir. 1998) (unpublished) (consent to search upheld even where defendant refused to sign waiver); *United States v. Correa*, No. 11-CR-0750, 2013 WL 5663804, at *2-4 (N.D. Ill. Oct. 17, 2013) (Dow, J.) (finding that the defendant voluntarily consented to search where he said "go ahead and search it," but refused to sign a written consent form). A "refusal to execute a written consent form subsequent to a voluntary oral consent does not act as an effective withdrawal of the prior oral consent." *United States v. Lattimore,* 87 F.3d 647, 651 (4th Cir. 1996) (citing

*United States v. Thompson,* 876 F.2d 1381, 1384 (8th Cir. 1989), *cert. denied,* 493 U.S. 868, 110 S.Ct. 192, 107 L.Ed.2d 147 (1989)).

II.     Defendant's Oral Consent to the Search

   A.  Defendant's Apartment

On April 5, 2014, ATF Special Agents, including Supervisory Special Agent Sisto and Special Agent Labno, and Oak Park Police detectives went to 653 N. Austin Avenue in Chicago to execute an arrest warrant for Defendant Kelsey Jones for the shooting of a federal informant. Jones lived with his brother Toby Jones in the third floor apartment at that location. As Agents Sisto and Labno testified, they went to the apartment building and several agents went to the third floor where Defendant lived. At the same time, another agent pressed the doorbell for the apartment that was marked Toby Jones and Kelsey Jones. The agents knocked loudly on Defendant's apartment door, announced they were the police, and told Defendant they had a warrant for his arrest. Kelsey Jones eventually opened the door but the agents had to force their entry through the gate leading to the door. They then placed Defendant in handcuffs and Agent Sisto patted him down for weapons.

After they handcuffed Defendant, the agents conducted a search incident to arrest and a protective sweep of the apartment. No one else was present in the apartment. Special Agent Labno advised Jones that he was under arrest. Agent Labno informed him that Defendant did not have to say anything. Special Agent Labno and Special Agent Sisto both credibly testified that they asked Defendant if law enforcement could search his apartment. Agent Labno told him that he had a right to refuse to consent. Both Special Agent Labno and Special Agent Sisto consistently and credibly testified that Defendant told them orally that they could search the

apartment. When Defendant told them they could search the apartment, he added that "there ain't anything in there anyway." As Agent Labno testified:

> I said that we were interested in taking a look inside his house, searching his apartment. And he at that point said go ahead and take a look around. There's nothing in there and repeated that several times.

(Transcript of Hearing ("Tr.") at 51.)

After he orally agreed to the search, Special Agent Labno then presented Defendant with a pre-printed ATF consent to search form and explained his rights regarding a consent search. (Gov. Ex. 2.) Agent Labno testified that he reviewed each of Defendant's rights with him, which are listed on the pre-printed form. Agent Labno read and reviewed the entire form with Defendant. After he reviewed the form, Defendant "again repeated the fact that he didn't have anything in the house, but – and he was willing to let us search but he wasn't going to sign the form." (Tr. at 55.) Defendant then reiterated his consent to the agents and his refusal to sign the form. Agent Labno recorded this information in his ATF Report of Investigation. (R. 133-2, Report of Investigation.) His report reflects that "JONES states that he would allow Agents to search his apartment saying 'There ain't anything in there anyway.'" (*Id.* at 2.)

The consent to search form indicates "refused to sign" under "Signature of Consentee." (*Id.*) The agents explained during the hearing that they contemporaneously recorded Defendant's refusal to sign the consent to search form. (Gov. Ex. 2.) Both Special Agent Labno and Special Agent Sisto witnessed Defendant's refusal, although they did not write on the form that he had orally consented to the search even though he refused to sign. (*Id.*)

In addition, both agents credibly testified that Defendant never revoked his oral consent while they were in the apartment and never told the law enforcement agents to stop searching the apartment. Defendant does not contest that the agents did not yell at him or threaten him. Both

6

agents testified that Defendant did not appear intoxicated or inhibited when they spoke with him, and Defendant has not presented any evidence to contradict this testimony. In addition, Defendant is not claiming that he was confused or had difficulty hearing the Agents, and the agents confirmed that he was not confused and did not have trouble hearing them.

### B. Defendant's Testimony

Prior to the hearing, Defendant submitted an affidavit in support of his motion to suppress. (R. 145-1.) In the Affidavit, Defendant stated "under oath under penalty of perjury" that the contents of his Motion to Suppress Physical Evidence and the Reply to the Motion were "true and accurate." (*Id.*). In the Motion, Defendant denied "ever giving oral consent to search the apartment, or to seize articles of clothing contained therein." (R. 145 at 2.) He also represented that he "refused to sign a Consent to Search form" presented to him by law enforcement at both the apartment and while officers were transporting him to the Oak Park police station. (R. 109.)

During the hearing, Defendant testified about the search at his apartment. Defendant testified that on April 5, 2014 at some point after 6 p.m., law enforcement officers came to his apartment door. He opened his door and the agents told him that he was under arrest, to get on the floor and put his hands behind his back. According to Defendant, the agents then "forced their way" through the bars and came into the apartment. They handcuffed Defendant and picked him up from the floor. When counsel asked Defendant if he had a conversation with Agent Labno regarding a search of his apartment, Defendant initially said "I can't – I ain't for sure." (Tr. at 86.) He also testified that Agent Labno never showed him a document. Defendant testified that he never saw the ATF consent to search form (Gov. Ex. 2) and that no one ever

7

showed it to him. (Tr. at 94-95.) In addition, Defendant said that he never told Agent Labno that he had Defendant's permission or consent to search his apartment. (Tr. at 87.)

The following exchange took place on cross examination:

Q: And do you recall having a conversation with [Agent Labno] about consent to search your apartment?

A: No, sir.

Q: So, it's your testimony that he never mentioned consent to search with you at all?

A: No, sir.

Q: He never – how about Special Agent Sisto?

A: No, sir.

Q: Did any agent at all ask you for permission to search you apartment?

A: No, sir.

Q: And you're positive about that?

A: Yes, I am.

(Tr. at 93-94.)

In contrast, Defendant also testified that Agent Labno "asked me to sign a consent to search, yeah. He asked me that." Defendant testified that he told Agent Labno "there's nothing in my apartment. I'm not signing no consent." (Tr. at 86.)

Defendant further testified that law enforcement agents drove him to the Oak Park Police station and placed him in a room. He said that an officer "slid a piece of paper in front of [him] saying this is not saying that you did anything but we just need you to sign your name on this form." (Tr. at 90.) According to Defendant, the officer did not tell him what the form was or explain anything to him. (*Id*.) Defendant refused to sign and testified that he did not give the

officer permission to search his apartment. Defendant also testified that the officers did not ask him for consent to search his apartment when he was with them at the police department.

The Court does not find Defendant's testimony credible on this issue. Not only did Defendant contradict himself while testifying, but his testimony contradicted his affidavit in support of this motion. This contradictory testimony, and Defendant's evasive manner while testifying, make his testimony not credible. During his brief testimony at the suppression hearing, Defendant testified that the agents never had a conversation with him about searching his apartment and never showed him the consent form to sign. He then contradicted himself on the stand and said that Agent Labno asked him to sign a consent form, but he told Agent Labno that there was not anything in his apartment and he was not going to sign a consent form. His testimony that the agents never showed him the consent form also directly contradicts his sworn representation in his motion to suppress that he "refused to sign a Consent to Search form" presented to him by law enforcement at both the apartment and while officers were transporting him to the police department. (R. 109.)

Moreover, Defendant testified that he has at least seven felony convictions, further casting doubt on his credibility. Indeed, Defendant's Pretrial Services Report reflects that he has been in and out of trouble with the law since the age of 15. (R. 135.) Defendant, who is now 38, has had at least eight felony convictions since the age of 18, including convictions for unlawful use of a weapon, possession of a controlled substance, aggravated unlawful use of a weapon, and manufacture and delivery of a controlled substance. He also has prior parole violations and revocations, and has used alias names and dates of birth in connection with some of these convictions—which further impugns his honesty. (*Id.*) Furthermore, Defendant's repeated

exposure to law enforcement and the criminal justice system suggests that he understood his options, and did not misunderstand his interactions with the agents.

As the government notes, on the date of the search Defendant also gave oral consent to law enforcement to waive his *Miranda* rights while refusing to sign a written consent form. According to Agent Labno's report, Defendant advised that while he was not willing to sign a consent form, he was willing to waive his rights and "very much wanted to talk" with the agents. (R. 133, Exs. F and G.) Although Defendant originally moved to suppress his oral statements, he withdrew that motion and no longer disputes that he gave oral consent to the agents. (R. 164.) The fact that Defendant was willing to provide oral consent but refused to provide written consent in another instance on the same date as the search lends further support to the government's version of events. In sum, Defendant's completely contradictory testimony, the evidence of Defendants' prior convictions, and his refusal to give written consent while orally waiving his *Miranda* rights severely weakens the believability of his testimony. The Court also notes that Defendant has a substantial motivation to prevent the introduction of the seized items at trial.

The Court is also not persuaded by Defendant's argument that different law enforcement agents testified to different language used by Defendant. Both Agent Sisto and Agent Labno consistently testified that they could not remember the precise words Defendant used when he consented to the search of the apartment, but they remembered that he conveyed that the agents could search it because "there's nothing here anyway." (Tr. at 41, 65.) While Agent Labno's report only included quotes around Defendant's statement that "There ain't anything in there anyway," his report also clearly reflected that Defendant orally consented to the search at the same time. (R. 133-2.) The fact that he did not quote Defendant's precise statement does not

undermine Agent Labno's credibility because his report still clearly reflected Defendant's consent.

Agent Labno also credibly explained that he originally could not find an ATF consent form when he arrested Defendant and asked Oak Park Police Detective Episcopo if he could "possibly find an Oak Park police consent to search form." (Tr. at 73.) Agent Labno then found an ATF form, but did not convey this information to Detective Episcopo or the Oak Park Police. After they completed the search of Defendant's apartment, Detective Episcopo "mentioned that some officers who had transported Mr. Jones had also spoken to him and he had given them consent, as well." (*Id.*) In other words, Agent Labno set off a chain of events with the Oak Park Police when he asked Detective Esposito to find a consent form. The next steps in the chain that took place at the Oak Park Police Department are discussed below. This fact does not take away from the finding that Defendant orally consented at his apartment.

### C. Oak Park Police Department

After the agents began to search the apartment, they took Defendant downstairs and turned him over to the Oak Park Police to transport Defendant from his apartment to the Oak Park Police Department[3]. Once at the police department, officers placed Defendant in an interview room.

Detective Sperandio, who has worked at the Oak Park Police Department for 24 years, testified that he first met Defendant when he was inside an interview room on April 5, 2014. Detective Sperandio did not participate in the arrest or the transportation of Defendant from his apartment to the police department. He testified that someone in the police department directed

---

[3] Agent Labno's written report reflected that Defendant Jones gave the Oak Park Police consent to search his apartment while they transported him to the police department. During this testimony, Agent Labno conceded that this part of his report is inaccurate. He explained that he misunderstood the location where Defendant had given Detective Sperandio and Detective Taylor consent to search.

him to ask Defendant for consent to search his apartment, but he could not remember who asked him to do so.

Detective Sperandio testified that the Oak Park Police Department keeps Consent to Search forms on its computer system. He typed certain information into the Consent to Search form before presenting it to Defendant, including a description of the crime (aggravated battery with a firearm) at issue. (Gov. Ex. 1.) After filling in certain information on the form, Detective Sperandio and Detective Taylor went into the interview room with Defendant who was seated in a chair at the table. Defendant was not handcuffed during this process and Detective Sperandio was not armed. He presented Defendant with the Oak Park Police Department Consent to Search form. (Gov. Ex. 1). Detective Sperandio then read the consent form out loud to Defendant and asked him to follow along. After Detective Sperandio read the form to him, Defendant told him that "they can search whatever they want, but I'm not going to sign anything." (Tr. at 10.) After Defendant made this statement, Detective Sperandio noted on the signature line of the consent form: "REFUSED TO SIGN BUT GAVE ORAL CONSENT." (Gov. Ex. 1.) Both Detective Sperandio and Detective Taylor signed the form as witnesses. (*Id.*)

Defendant has questioned the necessity of the officer's attempt to obtain this consent after the search of the apartment and after Defendant refused to sign the ATF consent form. Given the Court's finding that Defendant gave his oral consent at the apartment at the time of his arrest, the Court need not address this argument. For the sake of completeness, however, the Court will do so.

The Court credits Detective Sperandio's testimony and finds that Defendant again voluntarily consented to the search of his apartment at the Oak Park Police station. Detective Sperandio testified with caution and care, and Defendant has not effectively challenged his

12

credibility. Detective Sperandio's testimony was consistent with the information he contemporaneously included on the Consent Form that Defendant orally consented but refused to sign the form. (Gov. Ex. 1.)

## CONCLUSION

For the reasons discussed above, the Court denies Defendant's motion to suppress.

**Dated: August 20, 2015**            **ENTERED**

_____
AMY J. ST. EVE
United States District Court Judge